UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID D. WILBON, RICO M. WILBON, ) <br> and GEORGE J. SMITH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOSEPH M. PLOVANICH, et al., ) <br> ) <br> Defendants. ) | No. 12 C 1132 <br> Hon. Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In their amended complaint, Plaintiffs set forth numerous claims against Defendants under 42 U.S.C. § 1983, stemming from their arrests in the early morning hours of April 10, 2010. The remaining Defendants, including eleven Chicago police officers as well as the City of Chicago, moved for summary judgment on all counts. Plaintiffs sought partial summary judgment on Counts I, II, IV, and V. In an opinion dated September 9, 2014 ("Opinion"), we resolved the cross-motions.[1] (Dkt. No. 250.) We granted Defendants' motion with respect to Count IV (failure to intervene) but generally denied both motions as to Count I (false arrest), Count II (unconstitutional search of Plaintiffs' persons), and Count V (supervisory liability of Lt. McDermott). As indicated in the conclusion of the Opinion, Count I remains pending against Lt. McDermott as well as Officers Kushiner, Garcia, and Silva.[2] (Op. at 40.)

---

[1] We clarified the Opinion by order dated October 7, 2014 (Dkt. No. 253), but that alteration did not affect the outcome of the Opinion.

[2] More specifically, the false arrest claims of Rico Wilbon ("Rico") and George Smith ("George") continue against all four of these defendants, while the false arrest claim of David Wilbon ("David") proceeds against only Lt. McDermott and Officers Kushiner and Silva.

1

Count II remains pending against all Defendant officers, except Officers Plovanich and Millan, who Plaintiffs voluntarily dismissed from that particular claim.[3]

Plaintiffs have filed a motion for reconsideration of the Opinion as it pertains to their partial motion for summary judgment. (Dkt. No. 254.) Plaintiffs contend that we misapprehended both the law and the facts. As set forth below, the motion is denied.

## BACKGROUND[4]

During the night of April 9–10, 2010, Plaintiffs were arrested after a witness claimed to have seen them (or at least claimed to have seen David) participate in a disturbance in the 1300 block of N. Menard in Chicago. The witness, Keith Thornton, testified that he saw David throw an object, striking a female police officer. He then watched David run from the block and get in a car carrying Rico and George. Thornton testified that he called 911 to report the disturbance and followed the car in which Plaintiffs were riding. He allegedly followed the vehicle until it stopped at the Chicago Police Department 15th district headquarters ("Police Department"). Thornton entered the Police Department and spoke to Lt. McDermott, describing what he had seen on N. Menard. According to Thornton, two other officers drove him by Plaintiffs and their vehicle in a show-up in front of the Police Department, at which point he identified David as the individual who threw the object at the female officer on N. Menard.

Plaintiffs dispute that they were present for any disturbance at the 1300 block of N. Menard that evening.[5] Plaintiffs had been socializing with some friends that evening; the group stopped their cars in front of the Police Department to further coordinate their plans.

---

[3] As stated in the Opinion, Plaintiffs withdrew all claims against Officers Gorzokowski and Karczewski. (Op. at 2.) Other claims also remain pending but are not implicated by this motion.
[4] We assume familiarity with the facts underlying this lawsuit, as set forth in detail in the Opinion. Nonetheless, we recite some basic facts to provide context for the present motion.
[5] Defendants admit that George was not present on N. Menard.

According to Plaintiffs, after they pulled over, numerous officers arrived in a rush and demanded that they exit the vehicle. The officers handcuffed, searched, and arrested all three Plaintiffs, later charging them with mob action. David was also charged with aggravated assault, and George was charged with cannabis possession. All charges were ultimately dismissed. As discussed in the Opinion, the primary question posed by this lawsuit is whether Defendants had probable cause to arrest, search, and prosecute Plaintiffs.

In support of their partial motion, Plaintiffs relied on certain facts, which they highlight again here. Plaintiffs identified purported inconsistencies in Thornton's description of the evening and challenged the route he took when allegedly driving from N. Menard to the Police Department. Plaintiffs also noted that, although Thornton allegedly saw a female officer struck in the head, no female officers were on N. Menard at that time. In addition, there is no 911 recording for that night with a call from Thornton (or anyone else) about a disturbance on N. Menard. Plaintiffs also insist that, based on the record evidence, Thornton admitted that he did not tell Defendants that George and Rico were present on N. Menard and that he did not implicate them in any criminal activity. Plaintiffs stress that Lt. McDermott, who authorized the arrests, did not recall anything that Thornton told her that gave her any reason to believe that Rico or George were involved in the N. Menard altercation. Based on these facts and alleged admissions, Plaintiffs contend that we erred in denying their partial motion on Counts I, II, IV, and V. (*See* Mot. at 4–9.)

## STANDARD OF REVIEW

Because Plaintiffs have asked us to reconsider a non-final order, our analysis is guided by Federal Rule of Civil Procedure 54(b), as well as our inherent authority. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Caine v. Burge*, 897

F. Supp. 2d 714, 716 (N.D. Ill. 2012); *Mitchell v. JCG Indus.*, 845 F. Supp. 2d 1080, 1082–83 (N.D. Ill. 2012); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 935 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Rule 54(b) provides that a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Reconsideration is appropriate only "where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *see also Bank of Waunakee*, 906 F.2d at 1191; *Caine*, 897 F. Supp. 2d at 716.

Moreover, "a motion for reconsideration does not allow a party to revisit strategic decisions that prove to be improvident, to reargue the evidence, to make new arguments, or to introduce new evidence that could have been presented earlier." *HCP of Ill., Inc. v. Farbman Group I, Inc.*, 991 F. Supp. 2d 999, 1000 (N.D. Ill. 2013); *Caine*, 897 F. Supp. 2d at 717; *see Janusz v. City of Chi.*, 03 C 4402, 2015 WL 269934, at *4 (N.D. Ill. Jan. 20, 2015). Rule 54 motions thus serve a limited function and are granted only in exceptional circumstances. *Bank of Waunakee*, 906 F.2d at 1191; *HCP of Ill., Inc.*, 991 F. Supp. 2d at 1000; *Caine*, 897 F. Supp. 2d at 717; *see Patrick v. City of Chi.*, 14 C 3658, 2015 WL 1880389, at *2 (N.D. Ill. Apr. 23, 2015).

**ANALYSIS**

In their motion, Plaintiffs contend that we misapplied the summary judgment standard of review by neglecting to consider the merits of their motion, independent of Defendants' motion.

4

(Mot. at 2–4.) Plaintiffs also argue that we overlooked factual concessions made by Defendants and either failed to rule, or ruled erroneously, on certain claims. (*Id.* at 4–6.) Having again reviewed the original summary judgment submissions along with the pending motion, we perceive no misapprehension or manifest error of law or fact. Nonetheless, we briefly address Plaintiffs' arguments below.

I.  **Application of the Summary Judgment Standard of Review**

Plaintiffs contend that we used the wrong methodology in considering the cross-motions. They argue that we mistakenly borrowed facts from Defendants' motion when addressing Plaintiffs' motion, rather than evaluating Plaintiffs' motion independently. (Mot. at 2–3.)

Plaintiffs are correct that, when assessing cross-motions for summary judgment, we consider each motion separately. *See Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 602–03 (7th Cir. 2015); *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 733 (N.D. Ill. 2014); *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F. Supp. 2d 989, 994 (N.D. Ill. 2007); *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 842 (N.D. Ill. 2006). Indeed, "the principles of Rule 56 demand a dual perspective that this Court has sometimes described as Janus-like: As to each motion the nonmovant's version of any disputed facts must be credited, an arrangement that sometimes causes the denial of both motions." *Isbell*, 30 F. Supp. 3d at 733; *Hotel 71 Mezz Lender LLC*, 778 F.3d at 602; *Neuma*, 515 F. Supp. 2d at 842.

Here, in reviewing the parties' cross-motions, we readily concluded that significant factual disputes precluded the entry of summary judgment for either party. Thus, at the beginning of the Opinion, we stated that "most of the statements of fact are disputed in whole or in part." (Op. at 3.) We relied on the basic undisputed facts admitted by the parties and otherwise could make no findings of fact. (*Id.*) As indicated in footnote three, we recited

Plaintiffs' version of the disputed facts as to their conduct, as set out in their partial motion, and recited Defendants' version of the disputed facts as to their conduct, as set out in their motion. (Op. at 3 n.3.) We took this approach in our effort to logically synthesize the parties' statements of fact as background and, moreover, to emphasize the factual disputes. If anything, this approach was overly generous to the parties, in that we relied on their own factual descriptions of their own conduct for purposes of setting out the context of the case.

In any event, Plaintiffs' argument ignores the reality that the cross-motions—when considered separately—revealed the same obvious and material factual disputes. After reviewing the background, we then addressed those obvious factual disputes simultaneously in our analysis of Plaintiffs' claims. Because we credited the nonmoving party's version of the facts on each motion, the competing inferences in this case neutralized each other, necessitating denial of both motions to the extent they turned on the contested probable cause determination. In sum, we did not misunderstand or misapprehend either the parties or Rule 56.

## II. Genuine Disputes as to Material Facts

Plaintiffs relatedly argue that Defendants conceded essential facts in opposition to Plaintiffs' partial motion for summary judgment. They contend that, had we considered their motion standing alone, we would have necessarily concluded that Plaintiffs had met their burden of proof to prevail on Counts I, II, IV and V. We reject this argument for two reasons.

First, Plaintiffs' argument essentially rehashes their reply brief in support of their partial motion. (*Compare* Pls.' Reply ISO Partial MSJ (Dkt. No. 236) *with* Mot. (Dkt. No. 254).) We have already considered and rejected these arguments. Plaintiffs may not recycle them on reconsideration. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (affirming denial of

motion to reconsider that incorporated earlier arguments); *see HCP of Ill., Inc.*, 991 F. Supp. 2d at 1000; *Caine*, 897 F. Supp. 2d at 717.

Second, we deny the motion on its merits. Defendants did not make the forceful concessions asserted by Plaintiffs. Defendants disputed, for example, Plaintiffs' statement that David and Rico were never on the 1300 block of N. Menard that night. (Defs.' Resp. to Pls.' SOF ¶¶ 9–14.) In addition, Thornton gave conflicting deposition testimony about the color of the vehicle he followed that night, testifying both that he could not recall the color (as noted by Defendants) and that it was "dark-colored" (as noted by Plaintiffs, who were riding in a white vehicle). (*Id.* ¶ 45; *see* Thornton Dep. at 116, 180.)

Moreover, the issue at this stage is not whether Thornton's account turns out, in retrospect, to be unreliable. The question at the heart of Plaintiffs' claims is not whether they were actually on N. Menard—the primary question is whether Defendants, at the relevant time and under the totality of the circumstances, had probable cause to reasonably believe that Plaintiffs had been involved in the disturbance on N. Menard. *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 484 (7th Cir. 2011); *Guidry v. Boyd*, 06 C 1600, 2007 WL 2317174, at *6 (N.D. Ill. Jul. 17, 2007). Police officers, of course, sometimes make mistakes. If the mistake (whether of law or of fact) is objectively reasonable, an officer acting in error has not violated the Constitution. *Heien v. North Carolina*, — U.S. —, 135 S. Ct. 530, 532–33, 536 (2014) (noting that "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials"); *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706 (7th Cir. 2013) ("The probable-cause standard inherently allows room for reasonable mistakes."). Importantly, the probable cause standard "'does not require that the officer's belief be correct or

7

even more likely true than false, so long as it is reasonable.'" *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543 (1983)).

Consistent with these principles, many of the alleged inaccuracies in Thornton's testimony are not particularly relevant for present purposes.[6] And those discrepancies that are directly relevant to the probable cause inquiry—that is, those discrepancies concerning the information known to Defendants on the night of April 9–10, 2010—are disputed. For example, Plaintiffs argue that Defendants admitted that Thornton: (1) did not tell Defendants that Rico and George were on N. Menard; and (2) did not implicate either of them in criminal activity. (Mot. at 5.) Thornton testified that, when Lt. McDermott asked about Plaintiffs and their friends, he told her that he didn't know them but that they had picked up David as he left N. Menard. (Thornton Dep. at 164–65, 178–79.)

For her part, Lt. McDermott did not recall whether Thornton said anything that made her believe Rico and George were involved in the altercation on N. Menard. (McDermott Dep. at 141.) But Lt. McDermott also testified that she spoke to Thornton and that he had "observed the offenders . . . observed them do those acts, enter that car, followed them and never lost sight of them." (*Id.* at 99; *see also id.* at 96–99, 107 ("And he told me he observed those offenders that were in the car throw . . . objects at police officers.").) Based on the entirety of the record before us, the details of this important conversation between Thornton and Lt. McDermott are unclear, and their credibility undetermined. Because there are questions of fact about what Defendants knew that evening, summary judgment was inappropriate.[7]

---

[6] Certainly the numerous alleged discrepancies may be critical to a jury's credibility determination. At the summary judgment stage, however, we may not assess a witness's credibility. *See Williams v. City of Chi.*, 733 F.3d 749, 752 (7th Cir. 2013).
[7] There is also a factual dispute concerning what, if anything, Thornton told two other officers during the alleged drive-by show-up in which he identified David. Thornton testified that he

**III. Resolution of the False Arrest Claims of Rico and George**

Finally, Plaintiffs contend that we failed to rule on their motion with respect to the false arrest claims brought by Rico and George based on the mob action charges. (Mot. at 6.) To the contrary, we began our analysis of Plaintiffs' claims by noting that "a genuine issue of material fact exists concerning whether the arresting officers had probable cause." (Op. at 14 (further noting the parties' dispute over facts surrounding Thornton's credibility and his communications with officers).) We again noted at page twenty-three, without qualification, that we were "not in a position to determine" whether Defendants had made the probable cause showing for Plaintiffs' false arrest claims because of the open questions of fact. (Op. at 23.)

We specifically held on page fifteen of the Opinion that we could not grant Plaintiffs summary judgment as to George's false arrest claim in any event because we were "unable to determine whether Defendants had probable cause for the other charge[] of aggravated assault" against him. (Op. at 15 (explaining that probable cause as to one charge would apply to other charges as well under *Williams v. Rodriguez*, 509 F.3d 392, 405 (7th Cir. 2007)).)

As for Rico, we reiterated on page 34 of the Opinion that "the facts are disputed as to whether Defendant officers had probable cause for . . . Rico's mob action charge." (Op. at 34 (denying motion as to malicious prosecution of that charge).)

Throughout the Opinion, we indicated that we could not grant either party summary judgment in light of the pervasive factual disputes as to probable cause. We plainly denied Plaintiffs' partial motion as to the false arrest claims brought by Rico and George.[8] As

---

explicitly told the two officers that George and Rico "had nothing to do with what [Thornton] was reporting." (Thornton Dep. at 157.) The parties dispute, however, whether any show-up occurred at all. (*See id.* at 156–57, 159–62, 164; Pls.' Resp. to Defs.' SOF ¶ 107.)

[8] In the motion, Plaintiffs argue that Defendants ignored the "temporal delay between the rush of officers to [George's] vehicle . . . and the alleged discovery of 1.2 grams of cannabis in the

summarized in the conclusion of the Opinion, as well as in footnote two above, these claims remain pending against Lt. McDermott as well as Officers Kushiner, Garcia, and Silva. (Op. at 40.)

IV. **Counts II, IV, and V**

As addressed in the Opinion, Count II (unlawful search of Plaintiffs' persons) and Count V (supervisory liability of Lt. McDermott) also turn on the probable cause determination. (Op. at 27–30, 37–39.) For the reasons discussed above with respect to Count I, reconsideration is not warranted as to these counts.

Finally, we touch on Count IV (failure to intervene). We granted summary judgment for Defendants as to this claim. (Op. at 30–32.) Plaintiffs have not articulated any additional, specific reason for reconsideration of Count IV. Thus, our prior ruling on Count IV stands.

## CONCLUSION

As set forth above, we deny Plaintiffs' motion for reconsideration. The parties shall submit their joint pre-trial order in open court at the status hearing set for August 6, 2015 at 10:30 a.m. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: July 6, 2015
Chicago, Illinois

---

vehicle." (Mot. at 6–7.) Defendants addressed this theory, however, which Plaintiffs had raised in opposition to Defendants' summary judgment motion. (*See* Pls.' Resp. to Defs.' MSJ at 12–13; Defs.' Reply ISO MSJ at 3–4.) Unsurprisingly, there is a factual dispute about whether Officer Cerda smelled burnt cannabis as he approached the vehicle outside the Police Department. (*See* Pls.' Resp. to Defs.' SOF ¶¶ 81–87; *see also* Op. at 29 n.12.)

10