# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID D. WILBON, RICO M. WILBON and GEORGE J. SMITH** Plaintiffs, | ) ) ) | **No. 12 C 1132** |
| | ) | |
| **v.** | ) | **Judge Marvin E. Aspen** |
| | ) | |
| **JOSEPH M. PLOVANICH, et al,** Defendants. | ) ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge:

The District Judge has referred the parties' 36 motions in limine to this court. [Dkt 270.] Through a court-ordered meet and confer process, the parties were able to come to an agreement on 16 of their motions which no longer require a ruling. (Order, Nov. 13, 2015.) [Dkt 316.] The court has requested additional briefing on Defendants' Motion no. 1 (Order, Feb. 29, 2016) [dkt 351], which implicates Plaintiffs' Motion no. 11. Below are the rulings on the remaining 18 motions in limine.

## BACKGROUND[1]

Plaintiffs David Wilbon, Rico Wilbon, and George Smith originally sued the Chicago Police Department, the City of Chicago, and thirteen police officers. (Comp.) [Dkt 1.] Plaintiffs were arrested after a witness, Keith Thornton, claimed to have seen them participate in an incident on the

---

[1] The background facts are taken from a Memorandum Opinion and Order entered by the District Judge on July 6, 2015, denying reconsideration of his rulings on motions for summary judgment. [Dkt 258.]

1300 block of North Menard in Chicago on the night and early morning of April 9-10, 2010. (July 6, 2015 Order at 2.) [Dkt 258.] Thornton testified he saw one of the Plaintiffs, David Wilbon, throw an object that struck a police officer and then get into a car carrying the other two Plaintiffs. (*Id.*) According to Thornton, he then called 911 to report the incident and followed Plaintiffs' car until it stopped at the Chicago Police Department's 15th district headquarters, at which point he entered the police department and reported what he had seen. (*Id.*) Thornton testified that two officers drove him by Plaintiffs and their vehicle, at which time he identified one of the occupants as the individual who threw the object at the officer on North Menard. (*Id.*)

Plaintiffs deny that they were present for any disturbance on North Menard that night, but rather had been socializing with friends and stopped their car in front of the 15th district police station to coordinate their plans. (*Id.*) The Plaintiffs allege that after they pulled over, officers arrived, demanded that they exit the vehicle, handcuffed, searched, and arrested all three Plaintiffs, and later charged them with mob action, aggravated assault, and cannabis possession. (*Id.* at 3.) Ultimately, all charges were dismissed. (*Id.*) Plaintiffs' amended complaint alleged false arrest, unconstitutional search, failure to intervene, supervisory liability, conspiracy, malicious prosecution, and indemnification. (Am. Compl. at 5-22.) [Dkt 22.]

At the conclusion of the District Judge's rulings on cross-motions for summary judgment, the following claims remained to be tried, with some parts of some claims going forward against certain defendants and not others: Count I (false arrest) against Lt. McDermott and officers Kushiner, Garcia, and Silva; Count II (unconstitutional search) against McDermott and officers Graney, Mangan, Esquivel, Valentin, Kushiner, Cerda, Silva, and Garcia; Count V (supervisory liability) against McDermott; Count VII (malicious prosecution) against Plovanich, Millan, Graney, Mangan,

McDermott, Esquivel, Valentin, Kushiner, Cerda, Silva, and Garcia; and Count VIII (indemnification) against the City of Chicago. (Mem. Opinion and Order, Sept. 9, 2014 at 40-41.) [Dkt 250.] A final pretrial conference is scheduled for April 21, 2016, at which time a trial date will be set. (Order, Dec. 17, 2015.) [Dkt 330.]

## LEGAL STANDARD

The power to exclude evidence *in limine* derives from the court's inherent authority to manage trials. *Luce v. U.S.,* 469 U.S. 38, 41 n. 4 (1984). The court has broad discretion in ruling on evidentiary questions presented in the motions in limine before trial. *Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine should only be granted when the movant establishes that the evidence is "clearly . . . inadmissable for any purpose." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 441 (7th Cir. 1997); *accord Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 4060293, at *1 (N.D. Ill. Sept. 14, 2012); *Plair v. E.J. Brach & Sons, Inc.,* 864 F.Supp. 67, 69 (N.D. Ill. 1994). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

Denial of a motion in limine is *not* a ruling that the material is necessarily admissible. Rather, it "means only that outside the context of trial, the court cannot determine whether the evidence in question is admissible." *Plair,* 864 F. Supp. at 69. The denial of a motion in limine does not preclude a party from objecting to the admission of evidence at trial. *See* Fed. R. Evid. 103.

# RULINGS

1. **Evidence about the financial condition of the defendant officers and indemnification by the City of Chicago**

   *Plaintiffs' motion in limine no. 9 and 10; Defendants' motion in limine no. 2*

Plaintiffs ask the court to bar evidence of Defendants' financial circumstances as a defense to Plaintiffs' claim for punitive damages because the Defendant officers refused to disclose any information about their finances during discovery. (Pls.' Mot. 9 at 3.) [Dkt 282.] Defendants respond by stating that, under a court order, the officers were not obligated to disclose their financial circumstances during discovery. (Defs.' Resp to Pls.' Mot. 9 at 1.) [Dkt 345.][2] They argue that the officers' financial information is relevant when the jury is considering punitive damages. (*Id*. at 2.)

In a related motion, Plaintiffs request that if the Defendants do assert their financial condition as a defense to a claim for punitive damages, Plaintiffs be permitted to present evidence that the City of Chicago will indemnify the Defendants against an award of compensatory damages. (Pls.' Mot. 10 at 3.) [Dkt 283.] They argue that if the Defendants are permitted to present their financial circumstances as a defense to Plaintiffs' punitive damages claim, then the door will be opened to evidence that the Defendant officers will be indemnified by the City of Chicago for compensatory damages. (*Id.*) In their response, Defendants argue that evidence about the City's indemnification obligation is irrelevant, unfairly prejudicial, and "akin to evidence of liability insurance," which might cause jurors to find for the Plaintiffs or inflate a damages award. (Defs.' Resp. to Pls.' Mot. 10 at 2.) [Dkt 346.]

---

[2] Defendants refer to an order granting their motion to defer discovery of Defendant officers' financial condition until after the resolution of dispositive motions. (Order, July 19, 2013.) [Dkt 158.] It does not appear that the issue has been raised since summary judgment was decided in 2014 and Plaintiffs' motion for reconsideration was denied in July 2015.

Although generally the City's indemnification obligation should not be discussed at trial for fear of encouraging a jury to inflate its damages award, the situation changes if the Defendants "open the door" by presenting evidence of their limited financial means. *Lawson v. Trowbridge,* 153 F.3d 368, 379 (7th Cir. 1998). The jury should not be left with a misleading impression. *Id.* If Defendants plead poverty at trial in an attempt to reduce any prospective compensatory damages award against them, Plaintiffs will be allowed to present evidence regarding the City's obligation to indemnify Defendants for compensatory damages. *Id.* As was observed, however, in *Betts v. City of Chicago,* 784 F. Supp. 2d 1020, 1030 (N.D. Ill. 2011), the situation could be "complicated by the fact that the defendants will not be indemnified for punitive damages." If Plaintiffs are permitted to present evidence that Defendants will be indemnified for compensatory damages, Defendants will be entitled to have the jury instructed that the indemnification is limited to compensatory damages and does not extend to punitive damages. *Id.* (citing *Mohr v. Chicago Sch. Reform Bd. of Trs*, 155 F. Supp. 2d 923, 929 (N.D. Ill. 2001). On that basis, Plaintiffs' motion in limine no. 9 is denied and motion no. 10 is granted.

In a related motion, Defendants request that Plaintiffs be barred from referring to defense counsel as Corporation Counsel and precluded from including the City of Chicago or the Chicago Police Department on the caption, the verdict form, or the jury instructions. (Defs.' Mot. 2.) [Dkt 290.] Defendants argue that any of these references will cause unfair prejudice and are not probative of the question of the officers' liability before the jury. (*Id.* at 2.)[3] Plaintiffs respond by arguing that barring any mention of the City of Chicago is tantamount to dismissing it as a party to the lawsuit.

---

[3] Plaintiffs' *Monell* claims against the City were voluntarily dismissed. [Dkt 54, 55, 59.]

(Pls.' Resp. to Defs.' Mot. 2 at 2.) [Dkt 313.] Further, Plaintiffs argue that mention of the City should not be barred because the City admits it will indemnify individual officers. (*Id.*)

The indemnification claim against the City is still part of this lawsuit. For that reason, the City of Chicago will remain named on the caption, jury instructions, and verdict forms. *See Tolliver v. Gonzalez,* No. 10 C 1879, 2011 WL 5169428, at *3 (N.D. Ill. Oct. 31, 2011); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011). Because there appear to be no claims pending against "unknown officers of the Chicago Police Department" as is currently listed on the caption, that line shall be removed from the caption, jury instructions, and verdict forms. Finally, as other courts have held, Plaintiffs shall "not refer gratuitously to defense counsel as 'corporation counsel' or 'City lawyers'" because such references may be prejudicial and have little relevance to the lawsuit. *Bruce v. City of Chicago*, No. 09 CV 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011); *see also Dyson v. Szarzynski,* No. 13 CV 3248, 2014 WL 7205591, at *8 (N.D. Ill. Dec. 18, 2014). The court will introduce counsel and their clients at the beginning of the trial and to the extent opposing counsel needs to refer to the other side, it should be by name or as "Plaintiffs' counsel" or "Defendants' counsel." *Id*. Accordingly, Defendants' motion in limine number 2 is granted in part and denied in part.


2.     **Plaintiffs' drug or alcohol use and photos taken by Plaintiffs' counsel of marijuana recovered from Plaintiffs' vehicle**

*Plaintiffs' motion in limine no. 6; Defendants' motion in limine no. 3*

Pursuant to Federal Rules of Evidence 402, 403, 404(a), 404(b), and 608, Plaintiffs ask the court to bar evidence regarding Plaintiffs' or their witnesses' drug or alcohol use. (Pls.' Mot. 6 at

3.) [Dkt 279.] Plaintiffs argue that there is no proof that they were under the influence at the time of arrest and that any such proof is irrelevant and prejudicial. (*Id*.) Defendants respond by stating that Rules 404(a), 404(b), and 608 do not apply and that the smell of marijuana was a factor that helped establish probable cause and is therefore relevant. (Defs.' Resp. to Pls.' Mot 6 at 1-2.) [Dkt 342.] They also argue, without explanation, that evidence about the Plaintiffs' or witnesses' use of drugs or alcohol would be offered to prove the Defendants' state of mind as they interacted with the Plaintiffs and other witnesses. (*Id.* at 2.)

Evidence about a witness's use of drugs has an obvious potential for prejudice. *See Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008). While such evidence may be admitted for certain purposes, for example, when it is probative a witness's ability to recollect or relate, "'[e]vidence that a witness has used illegal drugs'" may not be used "'for the sole purpose of making a general character attack'" *Id.* (quoting *U.S. v. Cameron,* 814 F.2d 403, 405 (7th Cir. 1987)). Because the question of probable cause is central to this case, Defendants will be allowed to introduce evidence for the limited purpose that the smell of marijuana aided officers in their probable cause determination. It is not clear how the Plaintiffs' or witnesses' drug use could prove the Defendants' state of mind, so the admissibility of that evidence must await further development at trial. Accordingly, Plaintiffs' motion number 6 is granted in part and denied in part. Plaintiffs are free to raise objections at trial and propose a jury instruction explaining the purpose for which the jury should consider the evidence that is introduced.

Defendants ask the court to bar under Fed. R. Evid. 403 photographs taken by Plaintiffs' counsel of marijuana recovered from Plaintiffs' vehicle. (Defs.' Mot. 3 at 1-2.) [Dkt 291.] Defendants argue that the photos are misleading and prejudicial because they distort the quantity of

marijuana recovered. (*Id.* at 2.) Additionally, Defendants argue that any probative value of the photos can be replaced by using the best evidence, the marijuana itself, which Defendants' counsel will cooperate in obtaining from the City's Evidence Recovery and Property Section. (*Id.*) Plaintiffs respond by stating that there is nothing misleading about the photos because the ruler in the photos objectively measures the size of the packet and because the photos were taken in the presence of defense counsel. (Pls.' Resp. to Defs.' Mot. 3 at 1-2.) [Dkt 314.]

It appears from the briefing that the Plaintiffs' counsel does not have access to the original evidence (the packet of marijuana), so Plaintiffs should be permitted to present the evidence of the photographs, subject to proper foundation and authentication. If Defendants, in fact, obtain the original packet, they should be permitted to introduce that as well. The jury will be able to compare the original to the photographs and draw its own conclusion. Accordingly, Defendants' motion in limine no. 3 is denied. In the event that the Defendants obtain the original packet for use as evidence, the parties' counsel shall discuss this motion again to see if the parties can agree to use the packet in lieu of the photographs.

**3.    Evidence regarding future lost earnings**

*Defendants' motion in limine no. 5; Plaintiffs' motion in limine no. 7*

Plaintiffs state that David Wilbon was a custodian for the Chicago Public Schools ("CPS") at the time of the incident and had applied for a promotion to "factor custodian." (Pl.'s Mot. 7 at 3.) [Dkt 280.] He claims that he was going to be offered the position until his background check indicated that he had pending charges for aggravated assault of a police officer. (*Id.*)[4] In their

---

[4] Plaintiff David Wilbon sought the promotion in August 2010. (Pls.' Mot. 7 at 3.) The charges were dropped in September 2010. (*Id.*)

motion, Defendants ask the court to bar evidence regarding David's claim for income lost as a result of his not getting the promotion, saying that there is no evidence that he was denied the promotion because of the arrest. (Defs.' Mot. 5 at 2-3.) [Dkt 293.] Defendants cite deposition testimony to the effect that David Wilbon was never formally given an offer and that a more experienced person was needed for the position. (*Id.*) There is no evidence, they argue, to support the allegation that David Wilbon lost a job opportunity because of his arrest. (*Id.* at 3.)

Plaintiffs bring their own motion asking the court to bar evidence or argument suggests that David was *not* denied a promotion to the factor custodian position. (Pls.' Mot. 7 at 3.) At his deposition, David Wilbon testified that he lost a promotion and time from work because of the criminal charges pending against him. (Pls.' Resp. to Defs.' Mot. 5 at 1-2.) [Dkt 331.] Additionally, Plaintiffs provide an FBI report responding to a request by the CPS, which shows a "hit" regarding Wilbon's arrest. (*Id.*, Ex. D.) They also attach a "Notice of Delay in Staffing" issued by CPS, stating that a high school diploma or GED, drug test, and fingerprint results were all pending as to David Wilbon as of August 23, 2010. (*Id.*, Ex. E.) There is some controversy about the latter document because a witness testified that the job number shown was not for the factor custodian position, but apparently later retracted that testimony. (Pls.' Resp. to Defs.' Mot. 5 at 4.) The witness also testified that David Wilbon lost the promotion to someone with more experience. (Defs.' Mot. 5, Ex. 1 at 15.)

Here, neither party has demonstrated that a motion in limine on this subject is appropriate. It is well established that speculative damages are not recoverable under Illinois law. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 66 (Ill. 1987). However, courts have also held that plaintiffs "must be given the opportunity at trial to provide the necessary foundation for evidence

of damages." *Thakore v. Universal Mach. Co. of Pottstown, Inc.,* 670 F. Supp. 2d 705, 717-18 (N.D. Ill. 2009).  Defendants may  object to any evidence that would permit impermissible speculation by the jury, because neither hypothesis nor speculation is a substitute for proof of damages.  *See Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 933 (7th Cir. 2003).  Whether Plaintiffs introduce the necessary evidence to prove this element of damages is a determination that must be made at trial.

Defendants' motion also seeks to bar Rico Wilbon from seeking three days' lost wages: April 10, 2010, and two days that he voluntarily allegedly missed work to attend David's court proceedings.  (Defs.' Mot. 5 at 3.)  Plaintiffs state, however, that Rico Wilbon is not seeking compensation for the days he went to David's court proceedings, just for the single day he lost to attend his own court proceedings.  (Pls.' Resp. Defs.' Mot. 5 at 4-5.)  Defendants have cited no authority supporting their argument that Rico cannot recover for that day simply because he used a vacation day or sick day.

Accordingly, both Plaintiffs' motion in limine no. 7 and Defendants' motion in limine no. 5 are denied.


### 4.      Evidence relating to officer Keith Thornton

*Plaintiffs' motion in limine no. 3; Defendants' motion in limine no. 6*

Plaintiffs ask the court to bar all evidence that a third-party witness, Keith Thornton, is currently a Los Angeles police officer.  (Pls.' Mot. 3 at 3.)  [Dkt 276.]  Plaintiffs argue that Thornton's testimony about the incident is "improbable," and that on the night of the incident, Thornton was unemployed and "drifting in life."  (*Id*. at 4.)  Defendants correctly observe that

questions about a witness's present employment are threshold issues that do not have a materiality requirement. (Defs.' Resp. to Pls.' Mot. 3 at 1.) [Dkt 341.] *See, e.g., U.S. v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) (stating that such questions provide a setting for the jury to judge the character, veracity, or bias of the witness). Plaintiffs' motion in limine no. 3 is denied.

In a separate motion, Defendants ask the court to bar Rashaun McGee from testifying as to his opinions of Thornton. (Defs.' Mot. 6 at 1-2.) [Dkt 294.][5] Apparently, McGee is a private investigator whom Plaintiffs employed to interview Thornton. (Pls.' Resp. to Defs.' Mot 6 at 2.) [Dkt 335.] Although Plaintiffs state that they do not know what testimony Defendants want to bar (*id.* at 1), Defendants specifically cite the testimony in McGee's deposition on pages 48-51, which was apparently given during Defendants' counsel's cross-examination of McGee. (Defs.' Mot. 6, Ex. A at 48-51.)

Defendants' concern is that Plaintiffs will use McGee as if he were an expert witness, suggesting that his training and experience as an investigator permit him to express opinions on whether Thornton's recollection is believable. For example, McGee testified that he found Thornton's inability to remember more details "significant" because:

> it's not the kind of thing that happens every day. Experiences like that, people tend to remember vividly. They might not remember specific details or might misremember specific details later but they will still have more than just broad strokes of an incident like that.

(Defs.' Mot. 6, Ex. A at 49.)

Apparently, Plaintiffs did not serve a disclosure under Fed. R. Civ. P. 26(a)(2) regarding McGee. Without such a disclosure, McGee cannot give testimony based on his "scientific, technical,

---

[5] Defendants indicate that Plaintiffs have listed McGee as a "may call" witness. (Defs.' Mot. 6 at 1.)

or other specialized knowledge." Fed. R. Evid. 702(a); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756-57 (7th Cir. 2004). Without a Rule 26(a)(2) disclosure, McGee is limited to testimony of what he observed, which is permitted under Fed. R. Evid. 701.

> Lay opinion "most often takes the form of a summary of firsthand sensory observations" and may "not provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."

*Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2011) (*quoting U.S. v. Conn*, 297 F. 3d 548, 554 (7th Cir 2002)).

The suggestion in McGee's deposition is that he is in a better position to opine about "what people tend to remember" because of his experience and training as an investigator. It is the jury's function to evaluate the quality of a witness's memory. Because Plaintiffs say that they will not ask McGee to testify as an expert, and in light of the fact that the answer Defendants now move to bar was elicited on their own questioning, Defendants' motion in limine no. 6 is denied without prejudice to Defendants' objections to testimony by McGee that would fall under Rule 702, or to any argument that his ability to evaluate Thornton is enhanced by his training or experience.

5.  **Evidence relating to the passage of time from the incident to trial and regarding the settlement in case no. 11 CV 7718**

    *Plaintiffs' motion in limine no. 8; Defendants' motion in limine no. 7*

Plaintiffs' motion requests that the court prohibit the Defendants from "blaming [the] plaintiffs" for the passage of time between the incident and the trial. (Pls.' Mot. 8 at 3.) [Dkt 281.] Defendants respond that they must be able to provide an explanation as to why the details of the incident were not fresh in their minds at their depositions and at the time of trial. (Defs.' Resp. to Pls.' Mot. 8 at 1.) [Dkt 344.] Defendants observe that the lawsuit was filed almost two years after

the incident occurred and that the Defendants' depositions were taken three years after the incident. (*Id*. at 2.)

Plaintiffs' motion in limine no. 8 is denied. The passage of time between the incident and the testimony is a legitimate matter for the jury to consider in evaluating a witness's memory. The parties should refrain, however, from pointing fingers about what happened in the course of discovery.

In a separate motion, Defendants ask the court to bar any evidence relating to the settlement in *Pleas v. Esquivel,* N. D. Ill. Case No. 11 CV 7718. (Defs.' Mot. 7 at 1.) [Dkt 295.] That was a civil rights claim brought by four men who were also arrested during the incident giving rise to this lawsuit. (Pls.' Resp. to Defs.' Mot. 7 at 2.) [Dkt 332.] Apparently, there was a settlement in which the City paid $50,000. (*Id*.) Defendants anticipate that Plaintiffs will attempt to introduce evidence of the settlement for the purpose of proving the validity of their own claims, which, Defendants argue, is prohibited by Fed. R. Evid. 408. (Defs.' Mot. 7 at 1-2.)[6]

Plaintiffs contend that the settlement of the *Pleas* case is an admission against interest by Defendants here, although Plaintiffs do not identify what the admission is. (Pls.' Resp. to Defs.'

---

[6] Fed. R. Evid. 408(a) provides:

Prohibited Uses. Evidence of the following is not admissible – on behalf of any party– either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
(1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
(2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Mot. 7 at 2.)  They do not, for example, point to any admission of fact or of liability in the settlement.  Rather, it appears that Plaintiffs are arguing that the fact of settlement alone is an admission of liability that is evidence of liability in this case.  They further argue that the prohibition in Rule 408 does not apply because it applies only to a settlement or offer to settle this claim.  (*Id*. at 3.)[7]

As a threshold matter, Plaintiffs have not demonstrated that the fact of the settlement in *Pleas* case is admissible under Fed. R. Evid. 801(d)(2), which provides that a "statement" by a party opponent is not hearsay.  A statement is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).  Plaintiffs make no effort to identify the "assertion" that was intended by the fact of settlement, or any authority to support their argument that the fact of a settlement is an assertion by a settling party.  On the contrary, "Rule 408 codifies the long-standing axiom in federal courts that compromises proposed or accepted are not evidence of an admission of the validity or invalidity of the claim or the amount of damage." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 408.03[1] (Joseph M. McClaughlin, ed., Matthew Bender 2d ed. 2014).

Plaintiffs' argument that the *Pleas* settlement is not a settlement of Plaintiffs' claim ignores the fact that the reason Plaintiffs want the settlement admitted is that, in their view, it is the same claim: "The seven friends were all engaged in the same activity . . . ."  (Pls.' Resp. to Defs.' Mot. 7 at 1.)  The general principle is that "[e]vidence of a completed compromise of a claim arising out

---

[7]  Plaintiffs  state that the court can take judicial notice of the settlement from information on a government website.  (Pls.' Resp. to Defs.' Mot. 7 at 4.)  Through a search, the court was able to find the spreadsheet attached to Plaintiffs' motion online, but the exhibit Plaintiffs provide does not indentify any website of which the court can take judicial notice.

of the same transaction between a third person and a party to the suit being litigated is also inadmissible." Weinstein & Berger, *supra*, § 408.04. Applying that general principle, the court in *Scaramuzzo v. Glenmore Distilleries Co.*, 501 F. Supp. 727 (N. D. Ill. 1980), refused to allow evidence of defendant's settlement of discrimination claims by persons other than the plaintiff:

> Though this rule [408] does not appear to go directly to the question of whether a plaintiff may introduce evidence regarding defendant's settlement of other similar case, the same strong public policy favoring out-of-court settlement that underlies Rule 408 is nonetheless applicable. It would be logically inconsistent to uphold the validity of Rule 408, while at the same time holding that a settlement offer could be used against the offeror in related cases. An offer of settlement can be of no legal relevance as to the offeror's liability, irrespective of whether the offer was made in the instant case or in a related case.

*Id.* at 733.

Although the court has discretion to admit evidence of settlement negotiations for other purposes (*see Zurich Am. Ins. Co. v. Watts Indus. Inc.*, 417 F.3d 682, 689 (7th Cir. 2005)), Plaintiffs have identified no purpose for admitting the *Pleas* settlement except to suggest Defendants' liability. Accordingly, Defendants' motion in limine no. 7 is granted.


**6.     Evidence relating to "the code of silence," the "blue wall," or alleged violation of CPD rules, policies, and regulations**

*Defendants' motions in limine no. 11 and 16*

In two separate motions, Defendants ask the court to bar evidence or suggestion that police officers lie, conspire, cover up, maintain a "code of silence" or a "blue wall," and also to bar evidence alleging violations of police department rules, policies, and general orders. (Defs.' Mots. 11 and 16.)  [Dkt 299, 303.]  With respect to the "code of silence," Defendants argue that such generalized assumptions are prejudicial and based on pure speculation. (Defs.' Mot. 11 at 2-3.)

Plaintiffs respond by arguing that the Mayor of Chicago has admitted that a code of silence exists among police officers and that on cross-examination Plaintiffs should be permitted to explore the fact that police officers, like members of any "tightly-knit" organization, are reluctant to implicate each other. (Pls.' Resp. to Defs.' Mot 11 at 2.) [Dkt 333.] Finally, Plaintiffs state that Defendants should raise their specific objections on this point in the context of trial. (*Id*. at 4.)

Defendants' motion in limine no. 11 is granted in part and denied in part. It is granted as to Plaintiffs' suggestion that they will introduce an excerpt from a speech from the Mayor of Chicago as proof that Defendants here are lying or covering up for each other. There is no suggestion that the Mayor was referring to this case and, if there is any relevance under Rule 401, it is outweighed by potential unfair prejudice and therefore is inadmissible under Rule 403. On the other hand, Plaintiffs are entitled to test the bias or motivation of any witness. The motion is otherwise denied without prejudice to any objections by Defendants at trial to any specific questions or evidence.

In support of their motion to bar evidence regarding any alleged violations of police department rules and polices, Defendants point to the Seventh Circuit's decision in *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), which stated that police department rules, regulations, and general orders shed "no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter" and are "immaterial as to the question of whether a violation of the federal constitution has been established." (Defs.' Mot. 16 at 1-2.) Defendants also argue that evidence of an alleged rules violation would be unduly prejudicial to the Defendants because the jury may be confused in distinguishing a constitutional violation from a police department rule violation. (*Id*. at 3.)

Plaintiffs respond that they have no intention of using police department rules to establish

a constitutional violation. (Pls.' Resp. to Defs.' Mot 16 at 1.) [Dkt 334.] They argue that Defendants' request is too broad because the Chicago Police Department has hundreds of orders, rules, and regulations and it is impossible to determine when a particular rule might become relevant at trial for purposes other than proving a constitutional violation. (*Id.* at 2.) Plaintiffs do not, however, identify any particular rule or regulation that they might introduce.

The court agrees that Defendants' request to bar any reference to all police department rules, policies, and general orders is overly broad at this time. If Plaintiffs seek to introduce a rule, regulation, or order at trial, Defendants may object or seek a limiting instruction. Defendants' motion in limine number 16 is denied without prejudice.

7. **Defendant and witness police officers' attire**

*Plaintiffs' motion in limine no. 12*

Plaintiffs request that the court bar Defendant officers and non-defendant police officer witnesses from wearing their uniforms during trial. (Pls.' Mot. 12 at 3.) [Dkt 285.] They claim that Defendants would be improperly bolstering their credibility. (*Id.*) Defendants agree that they and their police officer witnesses will not wear any medals on their uniforms during the trial. (Defs.' Resp. to Pls.' Mot 12 at 1.) [Dkt 348.] But they do not agree that they cannot wear their uniforms. (*Id.*) They point out that it is undisputed that Defendant officers were wearing their uniforms at the time of the incident. (*Id.* at 2.) Both Plaintiffs and Defendants will testify briefly about their backgrounds, describe where they work, and what it entails. (*Id.*)

Courts have permitted defendant police officers and non-defendant police officer witnesses to wear their uniforms without medals at trial (*Case v. Town of Cicero,* No. 10 C 7392, 2013 WL

5645780, at * 4 (N.D. Ill. Oct. 16, 2013); *Tolliver v. Gonzalez*, No. 10 C 1879, 2011 WL 5169428, at *1 (N.D. Ill. Oct. 31, 2011)), particularly in cases where the defendant officers were wearing their uniforms at the time the incident took place and are being sued as police officers (*Sughayyer v. City of Chicago*, No. 09 C 4350, 2011 WL 2200366, at *4 (N.D. Ill. June 6, 2011)).  Since Defendants and non-defendant officer witnesses have agreed to refrain from wearing any medals at the trial, the court finds no reason to prohibit them from wearing their uniforms at trial.  Accordingly, Plaintiffs' motion in limine no. 12 is denied.

**8.     Treating Defendants and all other officers and city employees as adverse witnesses**

*Plaintiffs' motion in limine no. 14*

Plaintiffs request that the court allow them to treat Defendants and all other officers and City employees as adverse witnesses pursuant to Fed. R. Evid. 611(c).  (Pls.' Mot. 14 at 3.)  [Dkt 287.] As Defendants point out, Plaintiffs are free to cross-examine non-defendant officers and  other witnesses who are called by the Defendants to testify.  (Defs.' Resp. to Pls.' Mot. 14 at 1-2.)  [Dkt 349.]  Presumably, then, Plaintiffs are referring to a situation in which they would call the officers and City employees as witnesses on Plaintiffs' case.  Defendants respond that it is premature to conclude that non-defendant officers and City employees should be treated as hostile witnesses.  (*Id*. at 2.)

Because Plaintiffs do not identify the non-defendant officers and City employees they intend to call, the court at this time can only rule based on the general principle that police officers who were present during the incident at issue and work closely with the Defendant officers may be considered witnesses identified with Defendants.  *Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th

Cir. 1981).

As to other City employees and non-defendant officers who were not present during the incident, it is premature to conclude that they all should be considered hostile witnesses under Rule 611. That decision is reserved for trial. Plaintiffs' motion in limine no. 14 is granted in part and denied in part without prejudice to the Plaintiffs' requesting leave at trial to treat a particular witness as a hostile witness under Rule 611.

9.    **Using maps as demonstrative exhibits**

*Defendants' motion in limine no. 4*

Defendants ask the court to bar Plaintiffs from using three proposed demonstrative exhibits: a Google map marked "Thornton's intended circuitous route to the fire station," a Google map marked "two possible Thornton routes to the fire station," and hand drawn map made by Rashaun McGee. (Defs.' Mot. 4 at 1-2.) [Dkt 292.][8] Defendants did not attach the disputed exhibits to their motion, but Plaintiffs included "Thornton's circuitous route" and "McGee's hand drawn map" as Exhibits A and B to their Response. (Pls.' Resp. to Defs.' Mot. 4.) [Dkt 315.]

Defendants argue that the two Google maps cannot be authenticated under Fed. R. Evid. 901(a). As Plaintiffs point out, Rule 901(a) is not applicable because the maps, if used, will be used only as demonstrative exhibits. (Pls.' Resp. to Defs.' Mot. 4 at 2.) A demonstrative exhibit "is not itself evidence – the exhibit is instead a persuasive, pedagogical tool created and used by a party as part of the adversarial process to persuade the jury." *Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701,

---

[8] The title of Defendants' motion refers to a fourth map entitled "Google map of Plaintiffs' Route" but that map is not discussed in the body of the motion.

706 (7th Cir. 2013). Such demonstrative exhibits are not admitted as substantive evidence and do not go to with the jury to the jury room during deliberations. *Id.* at 708. While demonstrative exhibits need not meet the standards required for admission of substantive evidence and do not have to be "completely accurate" (*Roland v. Langlois*, 945 F.2d 956, 963 (7th Cir. 1991)), they can be excluded under Fed. R. Evid. 403 if they are so inaccurate as to be misleading. *See, e.g., In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 72-73 (2d Cir. 1980) (chart showing glide slope path of airplane properly excluded because the times on the chart did not match the stipulated times).

That is Defendants' real argument on the motion: that the exhibits are not based on the evidence and so would mislead the jury. (Defs.' Mot. 4 at 3-4.) Plaintiffs argue that any objections to these demonstrative aids should be reserved for trial. (Pl.'s Resp. Defs.' Mot. 4 at 3.)

The motion is granted as to "McGee's hand-drawn map." (Pl.'s Resp. Defs.' Mot. 4, Ex. B.) That document is not, in fact, "a map." Plaintiffs describe it as a "hand-drawn diagram, made by Investigator Rashaun McGee contemporaneously with a conversation he was having with key witness Keith Thornton. . . . The relative location of people and structures corresponds to what Mr. Thornton was telling Investigator McGee." (Pls.' Resp. Defs.' Mot. 4 at 4.) McGee's deposition testimony, however, does not support that description. McGee described it as something that he was using "more as a tool, to A, get him [Thornton] talking which he was reluctant to do and, B, to try to provide him with a visual reference as to what he saw, not necessarily as something that was sketched in stone." (Defs.' Mot. 4, Ex. 2 at 69.) For that reason, McGee did not ask Thornton to sign off on the diagram as a correct and accurate representation. (*Id.*) McGee did not even include a mention of the diagram in his summary because "it was just a way to A, jog his memory and get him

talking which he really did not want to do – like an ice breaker." (*Id.* at 70-71.)  In short, there is no evidence that the diagram represents Thornton's description of events.  It was created by McGee as just "an ice breaker," "a tool" he used to start the conversation with Thornton.  There is a significant risk – confirmed by Plaintiffs' description of the diagram– that the jury may take it as representing *Thornton's* description rather than *McGee's* "ice breaker," outweighing any possible value in illustrating Thornton's conversation with McGee.  The motion is granted under Fed. R. Evid. 403.

As to the Google map marking "Thornton's circuitous route," the motion is denied without prejudice.  Plaintiffs have marked up a Google map of the area with lines that Plaintiffs say show Thornton's description of his travel on the night of the incident.  (Pls.' Resp. Defs.' Mot. 4 at 3.) It is not clear from the brief excerpt of Thornton's deposition testimony attached to Defendants' motion that his testimony supports the mark-ups Plaintiffs have added to the map. This is a decision, however, that must be left until the evidence comes in at the trial. If the evidence does not support the demonstrative exhibit, Defendants may object at trial. *Thakore,* 670 F.Supp. 2d at 718.  The Google map described "two possible Thornton routes from 1320 S. Menard" was not included with the motion, but the ruling would be the same.  Accordingly, Defendants' motion in limine no. 4 is granted in part and denied in part without prejudice.

**10.**     **Evidence regarding the incident on 1300 block of North Menard**

*Plaintiffs' motion in limine no. 1*

Plaintiffs ask the court to bar all evidence regarding the incident at the 1300 block of North Menard that is not relevant to this case.  (Pls.' Mot. 1.) [Dkt 274.]  They argue that the lengthy audio calls and radio communications are irrelevant and prejudicial and that only evidence used to

determine probable cause should be allowed, which they say, can be "easily circumscribed." (*Id.* at 3-4.) Plaintiffs also filed a supplement to their motion in which they argue that the testimony of Defendants, witnesses, and 911 recordings can be circumscribed to include only the relevant information. (Pls.' Mot. 1 Supp. at 1-2.) [Dkt 317.] The rest of the supplement lays out which portions of the 911 recordings and police communications the Plaintiffs intend to use at trial. (*Id.* at 2-5.) Defendants respond by arguing that the communications on the audio recordings and the observations recounted in the testimony of the events on the 1300 block of North Menard were used to establish probable cause for the charges against the Plaintiffs and are therefore relevant. (Defs.' Resp. to Pls.' Mot. 1 at 2.) [Dkt 340.]

In their motion, Plaintiffs generally indicate what testimony and portions of audio recordings they want to include, but do not specifically indicate what testimony or audio recordings they wish to exclude. The court is left to presume that Plaintiffs wish to exclude all other testimony and audio recordings except what Plaintiffs want to introduce.

One of the principal questions for the jury in this case will be to determine whether probable cause existed. In order for the jury to answer that question, they must be presented with the relevant evidence. While it seems that Plaintiffs believe they have provided all of the relevant evidence that relates to the probable cause determination, without knowing specifically what Plaintiffs seek to exclude, it is impossible for the court to make a decision that any specific piece of evidence should be excluded. *See Wielgus v. Ryobi Technologies, Inc.*, No. 08 CV 1597, 2012 WL 2277851 at *7 (N.D. Ill. June 18, 2012). At this stage, excluding unspecified evidence potentially related to the determination of probable cause is premature. *See Hawthorne Partners.*, 831 F.Supp at 1400-01 (relevancy objections should generally be reserved for trial to be decided in the proper context). For

those reasons, Plaintiffs' motion in limine no. 1 is denied.  At trial, Plaintiffs are free to make objections to specific pieces of evidence.

**11.     Evidence of George Smith's 2006 conviction**

*Plaintiffs' motion in limine no. 5*

Plaintiffs request that the court bar all evidence as to the prior arrests of the Plaintiffs or any witnesses, as well as Plaintiff George Smith's 2006 conviction.  (Pls.' Mot. 5 at 3.)  [Dkt 278.]  At the status hearing on November 13, 2015, the parties informed the court that Plaintiffs' motion in limine no. 5 was moot as to everything except George Smith's 2006 conviction.  (Order, Nov. 13, 2015.)  Smith was convicted in 2006 of possessing a rifle, and received a sentence of two years' probation, which he successfully completed.  (Pls.' Mot. 5 at 4.)

Defendants have not filed a response to Plaintiffs' motion in limine no. 5 regarding their position on evidence relating to George Smith's 2006 conviction, thereby waiving any objection and conceding the issue.  *Lundborg v. Weiss*, No. 13 CV 955, 2015 WL 5722585 at *2 (N.D. Ill. Sept. 29, 2015).

Furthermore, there are good reasons to grant the motion.  Fed. R. Evid. 609(a)-(b) provides that a witness may be impeached by evidence of a felony conviction unless the danger of prejudice substantially outweighs the probative value, or the witness's conviction or release from confinement ended more than ten years ago.  *Williams v. City of Chicago*, No. 11 C 1105, 2015 WL 410699 at *2 (N.D. Ill. Jan. 30, 2015).  Smith's conviction is close to ten years old, and Defendants have not provided any rationale as to why the conviction's probative value outweighs its likely prejudicial effect.  Nor have Defendants suggested that the offense was one that required proof of a dishonest

act or false statement.  Accordingly, Plaintiffs' motion in limine no. 5 is granted.  Evidence of George Smith's 2006 conviction is barred.

## **CONCLUSION**

Plaintiffs' and Defendants' motions in limine are ruled upon as set out herein.  Ruling with respect to Defendants' Motion in Limine No. 1 and Plaintiffs' closely implicated Motion in Limine No. 11 is reserved pending further briefing by the parties.


IT IS SO ORDERED.


March 9, 2016

_____
Geraldine Soat Brown
United States Magistrate Judge