UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID D. WILBON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 12 C 1132 |
| v. | ) | |
| | ) | Magistrate Judge M. David Weisman |
| JOSEPH M. PLOVANICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTIONS
TO KEITH THORNTON'S DEPOSITION TESTIMONY AT TRIAL**

Plaintiffs, DAVID D. WILBON, RICO M. WILBON, and GEORGE J. SMITH, by and through their attorneys, Irene K. Dymkar, Shamoyita M. DasGupta, Daniel H. Regenscheit and Torreya L. Hamilton, submit the following memorandum of law in further support of certain objections to the deposition testimony of Keith Thornton, Doc. 415. In support thereof, plaintiffs state as follows:

**I.    The collective knowledge doctrine does not apply to information Thornton testified about but was not actually communicated to or between defendant police officers.**

Testimony by Keith Thornton that he saw, heard, or did anything prior to arriving at the 15th District station should be excluded because it was not communicated to the defendant officers who illegally arrested the plaintiffs. Testimony about a "show-up" and conversations with a male and a female beat officers should also be excluded because they were likewise not communicated to the arresting officers. Such testimony is irrelevant unless the defendants acted on the basis of the information provided by Thornton. The collective knowledge doctrine does not impute to the defendant officers the information contained in Thornton's testimony.

The purpose of the collective knowledge doctrine is to allow police officers working together to rely on information actually communicated between one another. *See United States v. Hensley*, 469 U.S. 221, 231 (1985) ("[O]fficers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.") (internal quotes omitted). In some cases, where an officer has probable cause, other officers can obey a request or order to effect an arrest. *United States v. Roman*, 626 F. Appx. 177, 180 (7th Cir. 2015) ("[T]he directing officers must themselves have reasonable suspicion or probable cause"). Similarly, knowledge of facts between officers working together and actually in communication with one another can be imputed between them so that the collective knowledge of the officers may justify probable cause to arrest. *United States v. Lyons*, 733 F.3d 777, 782 n.1 (7th Cir. 2013) ("When law enforcement officers are in communication regarding a suspect, . . . the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine.") (internal quotation marks omitted).

However, individual officers cannot avail themselves of the collective knowledge doctrine when they are not directed to make an arrest or if no facts or nothing about probable cause are actually communicated to them. *United States v. Edwards*, 885 F.2d 377, 382 (1989). Information constituting probable cause cannot be imputed between officers "where there is no evidence that such knowledge was communicated to the agents on the scene who actually made or ordered the defendant's arrest." *Id.*

Probable cause is both the awareness of the commission of a crime and the individualized suspicion of the targeted individual. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 560 (1976) ("[S]ome quantum of individualized suspicion is usually a prerequisite to a constitutional

search or seizure."). Here, none of the defendant officers had or communicated information that identified the plaintiffs as suspects of a crime for which probable cause existed. The defendants had neither probable cause in itself nor information that combined amounted to probable cause.

The officer issuing an arrest order must herself have had probable cause on which to order an arrest for officers relying on that order to be justified in making the arrest. *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992) ("[T]he officers issuing the order or request [must] have an adequate basis for doing so, such that if they were present at the scene, they could justifiably stop or arrest the suspect"). Nothing suggests the facts communicated to the defendant officers amounted to probable cause, even in addition to the facts they perceived. Because there is no evidence of what was actually said, speculation on what may have been said is inappropriate. *See Nelson v. City of Chicago*, 810 F.3d 1061, 1074 (7th Cir. 2016) (rejecting witnesses' testimony on what might have been done). And the knowledge of officers working together at a scene is not imputed in the absence of a showing that there was actual communication. *See, e.g., United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007) ("As there was no communication from Officers Chu and McNeil at the front door to Lopez at the side door, it was improper to impute their knowledge to Lopez.").

Accordingly, Thornton's testimony of what he witnessed prior to arriving at the police station and his testimony of a "show-up" and conversations with a male and a female beat officers should be excluded because that information was not communicated to or between the officers.

**II.     The Court should not permit Thornton's testimony of a phone call where objective evidence renders his testimony legally incredible.**

Thornton's testimony that he made a phone call to 911 while following the plaintiffs in his vehicle for over two miles, from the site of the bottle attack to the 15th District police station, is objectively discredited by the absence of any recording of the phone call and any regularly kept digital records automatically documenting such a call. The Office of Emergency Management and Communications ("OEMC") keeps logs of all 911 calls as part of its regular practice and does not purge or destroy those logs. When a 911 call comes in, there is a voice recording of that call and an Event Number is automatically generated. While the voice recording may not have been retained (in violation of the retention order in David Wilbon's criminal case), the Event Number and the Event history would have been retained indefinitely.

No record of any phone call by Thornton or reflecting any semblance of the facts allegedly communicated by him appear in any OEMC records produced in this case, and defense counsel has been unable to find any. Defendants have produced all the audio Zone 12 communications for the time period of this event and there are absolutely no dispatcher communications or references to a 911 call or caller following a bottle thrower. Thus, there is no 1) audio recording of Thornton's 911 call, 2) no audio Zone 12 communication about such a 911 call, and, most important, 3) no digital record of an Event Number and Event records automatically generated by such a call.

This absence of digital evidence is objective evidence that the phone call did not take place and that Thornton's testimony otherwise is fabrication. No reasonable juror, let alone attorneys with an awareness of OEMC practices, could find it reasonable to believe Thornton

4

made any 911 call. Thornton's testimony about a 911 call is patently and indisputably false. Ethical considerations constrain the presentation of this false evidence to the jury.

Although the Court is not required to determine the truth or falsity of a fact prior to trial, relevant "other-act evidence may not be admitted unless the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed." *United States v. Gomez*, 763 F.3d 845, 853–54 (7th Cir. 2014), citing *Huddleston v. United States*, 485 U.S. 681, 682 (1988); *see* Fed. R. Evid 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Here, the defendants cannot provide evidence from which the jury could determine by a preponderance standard that Thornton's phone call—the "other act" in question—actually occurred. Unlike live trial testimony, Thornton's recorded deposition testimony will be co-extensive with his complete trial testimony, and so the parties and the Court are fully in possession of the details about which Thornton can and will testify. Nothing in Thornton's testimony or other documents or evidence produced during discovery provides a basis to support his testimony of that he made a 911 phone call.

Moreover, Thornton's testimony about his phone call is contradicted by objective evidence and therefore legally incredible. Legally incredible evidence is evidence or testimony which "reasonable persons could not believe" because it "contradicts indisputable physical facts or laws." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). Similarly, evidence is incredible as a matter of law when it would have been "physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Johnson,* 437 F.3d 665, 675 (7th Cir. 2006) (quotations

omitted); *cf. Latino,* 58 F.3d at 316 (noting a district judge's incredulity that one might sell a Chicago Bulls ticket rather than attend the game does not meet a standard of legal incredibility).

Thornton's testimony is also "exceeding improbable." *See United States v. Cardona-Rivera,* 904 F.2d 1149, 1152 (7th Cir. 1990) (finding that the "choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony.") (italics in original). Testimony that is physically impossible or contrary to the evidence or exceeding improbable should be excluded from the jury's consideration. *See Latino,* 58 F.3d at 316; *Cardona-Rivera*, 904 F.2d at 1152; *see also United States v. Cervante*, 958 F.2d 175, 180 (7th Cir. 1992) (noting that if the testimony is "exceedingly improbable," the appellate court will disturb credibility determinations); *United States v. Pendleton*, 447 F. Appx 978, 982 (11th Cir. 2011) (noting that where testimony is legally incredible, the jury's credibility determination should not stand). This is not a situation therefore in which there are mere discrepancies arising from impeachment, or inconsistent prior statements, or an improbable situation that is not "exceedingly" so. *See Ortiz v. Martinez,* 789 F.3d 722, 729 (7th Cir. 2015), citing *Whitehead v. Bond.*, 680 F.3d 919, 926 (7th Cir. 2012); *Venson v. Altanirano,* 749 F.3d 641, 646-47 (7th Cir. 2014). Here there is digital, electronic evidence from defendant City of Chicago that conclusively disproves Thornton's testimony about a 911 call.

Legal incredibility is typically a standard used during judgment as a matter of law, where a court may find it unreasonable to believe a critical witness. *See, e.g., Burger v. Int'l Union of Elevator Constructors Local No. 2,* 498 F.3d 750, 753 (7th Cir.2007). But in such cases, incredibility determinations are made *after* the witness has testified before a jury, allowing the false testimony to impair jury deliberation. Again here, because Thornton is testifying by video,

this Court can determine *before* trial which portion of his testimony are legally incredible and exclude them before they prejudice or confuse the jury. Making a legal incredibility determination prior to trial will avoid disrupting any jury verdict. *Cf. Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 633–34 (7th Cir. 2011) (noting that in ruling on post-trial motions, the district court tends to be "stuck with" the evidence presented to the jury, absent a finding of legal incredibility).

The plaintiffs and this Court should not be "stuck with" Thornton's untruthful and legally incredible testimony. Thornton's testimony regarding an alleged 911 phone call should be excluded.

In addition, even if one would accept, contrary to all evidence, that Thornton's ten to fifteen minute 911 call was actually made, his testimony about the call is irrelevant and provides no probative value to determining whether the defendants had probable cause to detain and arrest the plaintiffs. The substance of the 911 call was not communicated to the arresting officers because there was no 911 call, and, consequently, the audio of the Zone 12 communications (which the parties do have) does not include the dispatcher relating the substance of the non-existent call to the defendant officers. Also, Thornton himself did not recite the information from the 911 call to the arresting officers when he met up with them outside the 15th district police station.

Finally, the substance of the 911 call as related by Thornton is hearsay, that is, a statement previously made and offered in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Defendants seek to have Thornton testify through his video-taped deposition that he previously reported to the 911 call-taker that he saw a man in dreadlocks

throw a bottle that hit a female officer in the head and that the man entered a dark SUV in which there were three other men, which he followed for two miles. This is being offered to prove the truth of the matter asserted. It is hearsay and inadmissible. Moreover, because there are no records of the 911 call, defendants cannot rely on any exception to the hearsay rule such as the business records exception.

  For all these reasons, Thornton's deposition testimony regarding an alleged 911 phone call should be excluded at trial.

Dated: June 6, 2017              /s/ Irene K. Dymkar
                        Irene K. Dymkar

Plaintiffs' Attorneys:

Irene K. Dymkar
Shamoyita M. DasGupta
Daniel H. Regenscheit
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 562
Chicago, IL 60604
(312) 345-0123

Torreya L. Hamilton
Hamilton Law Office, LLC
53 West Jackson, Suite 452
Chicago, IL 60604
(312) 726-3173

**CERTIFICATE OF SERVICE**

      I, Daniel H. Regenscheit, an attorney, certify that on the 6th day of June, 2017, a copy of MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO KEITH THORNTON'S DEPOSITION TESTIMONY AT TRIAL was served upon the attorneys named below through the Court's electronic filing system:

      Dana M. O'Malley
      Kristin M. Pinkston
      Mark D. Winistorfer
      City of Chicago Department of Law
      30 N. LaSalle, Suite 900
      Chicago, IL 60602

Dated: June 6, 2017                                        /s/   Daniel H. Regenscheit
                                                                  Daniel H. Regenscheit